UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILSON HOLMES,

        Petitioner,

vs.                                          Case No. 3:21-cv-914-BJD-PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

## **ORDER**

### I.   **STATUS**

Petitioner filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody (Petition) (Doc. 1), pursuant to the

mailbox rule on July 2, 2019, in the United States District Court Northern

District of Florida, Tallahassee Division (Northern District of Florida).[1]  After

the filing of a response and reply, the Northern District of Florida transferred

the case to this Court (Docs. 19 & 20) on September 14, 2021.  Petitioner

challenges a 2014 state court (Duval County) conviction for kidnapping and

---

[1] In this Opinion, the Court references the docket and page numbers assigned by the
electronic filing system.

two counts of sexual battery.   Respondents filed FDC's Response to Federal Petition for Writ of Habeas Corpus (Response) (Doc. 13) and an Appendix (Doc. 13).[2]   Petitioner filed a Reply to Respondent's Response to Petition (Reply) (Doc. 17).   See Order (Doc. 14).

Petitioner raises four grounds claiming ineffective assistance of trial counsel.   Respondents concede the Petition is timely filed.   Response at 8. No evidentiary proceedings are required in this Court.   The pertinent facts are fully developed in the record, or the record otherwise precludes habeas relief; therefore, the Court can adequately assess the claims without any further factual development.   Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

## II.   HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir.) (quoting 28 U.S.C. § 2254), cert. denied, 142 S. Ct. 599 (2021). For issues previously decided by a state court on the merits, this Court must review the underlying state-court decision under the Antiterrorism and

---

[2] Respondents filed an Appendix (Doc. 13).   The Court hereinafter refers to the exhibits as "Ex."

Effective Death Penalty Act of 1996 (AEDPA).   In doing so, a federal district court must employ a very deferential framework.   <u>Sealey v. Warden, Ga. Diagnostic Prison</u>, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), <u>cert. denied</u>, 141 S. Ct. 2469 (2021); <u>Shoop v. Hill</u>, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Thus, "[u]nder AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>McKiver v. Sec'y, Fla. Dep't of Corr.</u>, 991 F.3d 1357, 1364 (11th Cir.) (citing 28 U.S.C. § 2254(d)(1)-(2)), <u>cert. denied</u>, 142 S. Ct. 441 (2021).   The Eleventh Circuit instructs:

> A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).   "Under the 'unreasonable application' clause, a federal habeas court may grant

3

> the writ if the state court identifies the correct
> governing legal principle" from Supreme Court
> precedents "but unreasonably applies that principle to
> the facts of the prisoner's case." Id. at 413, 120 S. Ct.
> 1495.

Lee, 987 F.3d at 1017-18.   Therefore, habeas relief is limited to those occasions
where the state court's determinations are unreasonable, that is, if no
fairminded jurist could agree with them.   McKiver, 991 F.3d at 1364.

This is a high hurdle, not easily surmounted.   If the state court applied
clearly established federal law to reasonably determined facts when
determining a claim on its merits, "a federal habeas court may not disturb the
state court's decision unless its error lies 'beyond any possibility for fairminded
disagreement.'"   Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam)
(quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Also, a state court's
finding of fact, whether a state trial court or appellate court, is entitled to a
presumption of correctness under 28 U.S.C. § 2254(e)(1).   "The state court's
factual determinations are presumed correct, absent clear and convincing
evidence to the contrary."   Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. §
2254(e)(1)).   See Hayes v. Sec'y, Fla. Dep't of Corr., 10 F.4th 1203, 1220 (11th
Cir. 2021) (Newsome, Circuit Judge, concurring) (recognizing the universal
requirement, applicable to all federal habeas proceedings of state prisoners,
set forth in 28 U.S.C. § 2254(e)(1)).   This presumption of correctness, however,

applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (acknowledging the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), cert. denied, 142 S. Ct. 124 (2021).   As such, a federal district court may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

Finally, where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgment, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) (Wilson).

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

The two-part <u>Strickland</u> [3] standard governs claims of ineffective assistance of counsel.   <u>Knight v. Fla. Dep't of Corr.</u>, 958 F.3d 1035, 1038 (11th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 2471 (2021).   <u>See</u> <u>Freeman v. Comm'r, Ala. Dep't of Corr.</u>, 46 F.4th 1193, 1220 (11th Cir. 2022) ("In an ineffective assistance of counsel claim, § 22543(d)'s terms are judged by the standard set forth in <u>Strickland v. Washington</u>.").   Pursuant to this standard, a defendant must show: (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense.   <u>Strickland</u>, 466 U.S. at 687.   A district court need not address both prongs if a petitioner makes an insufficient showing on one.   <u>Fifield v. Sec'y, Dep't of Corr.</u>, 849 F. App'x 829, 833 (11th Cir. 2021) (per curiam) (relying on <u>Strickland</u>), <u>cert. denied</u>, 142 S. Ct. 788 (2022).

To prevail, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'"   <u>Raheem v. GDCP Warden</u>, 995 F.3d 895, 908 (11th

---

[3] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Cir. 2021) (quoting <u>Strickland</u>, 466 U.S. at 687), <u>cert. denied</u>, 142 S. Ct. 1234 (2022).   Additionally, combining the deferential standard for judging the performance of counsel with the extra layer of deference that § 2254 provides, the resulting double deference "is doubly difficult for a petitioner to overcome[.]" <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 911 (2011).

"And to determine whether [Petitioner] is entitled to habeas relief[,]" this Court "must ask (1) whether the [state court] decisions were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined' in <u>Strickland</u>, or (2) whether the . . . decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." <u>Whatley v. Warden, Ga. Diagnostic & Classification Ctr.</u>, 927 F.3d 1150, 1175 (11th Cir. 2019) (citations and internal quotation marks omitted), <u>cert. denied</u>, 141 S. Ct. 1299 (2021).   This Court must be ever mindful that a state court's decision must be given deference and latitude and therefore the AEDPA standard is, as a consequence, quite difficult to meet.

## IV.   GROUND ONE

In ground one, Petitioner claims his counsel was constitutionally ineffective fore failure to object to the prosecutor's numerous improper remarks during closing arguments.   Petition at 6.   In this ground, Petitioner raises a

Sixth Amendment claim asserting he received ineffective assistance of trial counsel for failure to object to statements which were clearly meant to inflame the emotions and passions of the jury.   Id.   He submits that the prosecutor's statements encouraged the jurors to vote with their conscience, not based on the evidence.   Id. at 6-7.   Finally, Petitioner asserts that his due process rights were violated by these improper remarks which prejudiced his defense. Id. at 7.

Notably, Petitioner raised a comparable claim in his motion for post-conviction relief as ground one.   Ex. 29 at 4-11.   Applying the Strickland standard, id. at 3-4, the circuit court denied this claim of ineffective assistance of trial counsel.   Petitioner appealed the denial of post-conviction relief and the First District Court of Appeal (1st DCA) affirmed per curiam.   Ex. 27. The mandate issued on March 25, 2019.   Ex. 28.

Respondents adopt the reasoning of the state circuit court, noting the postconviction court's excellent discussion of why this ground is without merit. Response at 23.   Indeed, the circuit court provided a well-reasoned extensive ruling on this ground.

The record demonstrates the following.   The court instructed the jury: "[t]he attorneys now will present their final arguments.   Please remember that what the attorneys say is not evidence; however, do listen closely to their

arguments.   They are intended to aid you in understanding the case."   Ex. 17 at 168-69.   As such, the court properly instructed the jury that the attorneys during their closing arguments were not presenting evidence, they were simply making argument.   Assuming the jury followed the court's instructions, as this Court should reasonably assume, the jurors did not equate the argument with the evidence presented at trial.

In reviewing Petitioner's claim, this Court recognizes the legal maxim that attorneys are permitted wide latitude during closing argument. Hammond v. Hall, 586 F.3d 1289, 1335 (11th Cir. 2009), cert. denied, 562 U.S. 1145 (2011).   Also, it is important to place the argument in context, recognizing that often that prosecutor's remarks are in response to argument made by defense counsel, or are meant to be read as part of a more complete argument.

Based on a review of the circuit court's decision, it is quite apparent the court reviewed all of the prosecutor's comments in closing argument.   The court concluded that these comments were logical inferences based on witness testimony and evidence.   The court did not find any of the comments improper; therefore, it did not find any deficiency in counsel's performance by failing to object to the comments.   Rejecting the claim of deficient performance, the court denied post-conviction relief.   Alternatively, the court

found Petitioner did not satisfy the prejudice prong of <u>Strickland</u> considering that one comment could be considered improper.

The circuit court specifically referenced the comments Petitioner complained reflected the prosecutor's personal opinion of Petitioner's guilt and addressed Petitioner's claim that he was denied a fair trial and due process by defense counsel's failure to object.   Ex. 29 at 6.   The court denied Petitioner's contention finding it to be without merit after considering the comments in context of the entire closing argument and finding "they are a conclusion drawn from the evidence presented at trial."   <u>Id</u>.   The court further found through his comments the prosecutor was not giving his personal opinion but was expressing reasonable inferences from the evidence or introducing the state's position that the case had been proven beyond a reasonable doubt.   <u>Id</u>. at 7-9.

The court more singularly addressed the remark Petitioner claims really inflamed the minds and passions of the jury such that their verdict reflected an emotional response rather than a conclusion drawn from the evidence: "When you reach that verdict of guilty . . . you can go home and sleep like a baby because you know you've done the right thing[.]" Ex. 18 at 23.   The circuit court recognized, in isolation, the remark suggests impropriety; however, when read in context, "the prosecutor was arguing that the evidence and testimony

supported a verdict of guilty, and that the jury should not vote based on their emotions or forced doubts."   Ex. 29 at 10.

In context, the prosecutor asked the jury to base its decision on the evidence and facts, not because of sympathy, due to spite, or based on feelings about the lawyers or some speculation.   The prosecutor argued:

> When you go back in the deliberation room and you're determining this case, just remember the facts. You get to look at this evidence.   And don't force yourself to believe something that's speculative.   That you're imagining.   And I'll submit to you that when you reach that verdict of guilty . . . you can go home and sleep like a baby because you know you've done the right thing based on the testimony that you heard, based on the evidence that you've seen, and knowing that not because of sympathy, not because of spite, not because of not liking the lawyers, not because of some forced feeling[.]

Ex. 18 at 22-23.

The circuit court further found, even assuming the remark was improper, it was isolated and surrounded by argument asking the jury to base its verdict on the evidence.   Ex. 29 at 10.   As such, the court found Petitioner had not demonstrated the prejudice required by Strickland.   Id. at 11.

Based on the above, counsel did not perform deficiently for failure to object to the closing argument.   There was no lawful ground for an objection as the state was arguing the evidence, and the one questionable comment was

isolated and surrounded by argument concerning the evidence.   The circuit court found the brunt of the state's comments in closing argument fair comment, relying on reasonable inferences drawn from the evidence presented at trial.   The isolated questionable comment was not so egregious as to deprive Petitioner of a fair trial; therefore, Petitioner has not satisfied the prejudice prong of Strickland.

In denying post-conviction relief, the circuit court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland.   Further, Petitioner has not shown the state court unreasonably applied Strickland or unreasonably determined the facts. Indeed, upon review, the state court was objectively reasonable in its Strickland inquiry.   Furthermore, the 1st DCA affirmed.

The 1st DCA's decision, although unexplained, is entitled to AEDPA deference.   Applying the look through presumption described in Wilson, the state's court's ruling is based on a reasonable determination of the facts and a reasonable application of the law.

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Sixth

Amendment or Fourteenth Amendment violation under the United States Constitution.   In sum, the Court finds the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of the facts.   As such, Petitioner is not entitled to habeas relief on ground one.

## V.   GROUND TWO

In ground two, Petitioner counsel complains his counsel performed deficiently in failing to investigate and obtain a DNA extract for defense testing and in failing to call a defense DNA expert to refute the state's DNA expert witness.   Petition at 9-10.   This claim is without merit.

Firstly, the record shows that the entire three-millimeter by five-millimeter light brown tissue or material was consumed during the government's DNA testing.   Ex. 17 at 122.   Secondly, there was no evidence of sperm.   <u>Id</u>. at 87.   Since there was no skin left and the ejaculation sample contained no sperm, there was nothing left to test.

To the extent Petitioner is complaining about counsel's failure to investigate and obtain a defense DNA expert, the circuit court found Petitioner utterly failed to explain how he was prejudiced by counsel's failure to investigate and present an expert at trial.   Ex. 29 at 12.   Not only that, but the record shows that counsel did investigate and sought an expert.

The record shows the following.  Defense counsel filed a Notice of Discovery and Specific Demand for Information, demanding the state provide the defendant with all information regarding any physical evidence containing DNA which may exonerate the defendant or upon which DNA testing could be performed or provide mitigation.  Ex. 4 at 4.  Additionally, defense counsel filed a Notice of Discovery demanding from the state to disclose and permit testing of material within the state's control.  Ex. 5 at 7-8.  This was followed by the Defendant's Motion to Compel Production of Discovery Related to DNA Laboratory Analysis and Testing.  Id. at 10-12.  This motion included a request for all data files used and created in the course of performing the testing and analyzing the data in the case and the STR frequency tables among other relevant items.  Id. at 11.

The record also demonstrates that defense counsel filed a Motion for Authority to Incur Costs for a DNA medical expert, Gary Litman, PhD, Microbiologist.  Ex. 6 at 3-5.  This was followed by the court's order appointing Dr. Litman and authorizing costs.  Id. at 6-7.  Of import, the record shows defense counsel took the deposition of the Florida Department of Law Enforcement (FDLE) DNA expert as well.  Id. at 10.  In support, defense counsel submitted a Motion to Declare Defendant Indigent for Costs of Medical DNA Experts, Court Reporter and Transcripts.  Ex. 7 at 11-14.  These costs

were sought to prepare for trial.   Id. at 12.   The court granted defense counsel's motion.   Id. at 15.

In sum, there was no evidence of sperm in the ejaculate and the skin sample was used up in previous testing; therefore, counsel did not perform deficiently in this regard because, although collected, the ejaculation sample contained no semen and presented nothing to test, and the skin sample no longer existed and was unavailable for testing.   Further, the record evinces defense counsel's considerable efforts to investigate and prepare for trial.   As noted by the circuit court, Petitioner has failed to show how he was prejudiced by counsel's performance: "Defendant fails to describe the testimony that would have been provided or additional evidence that would have been introduced had such experts been retained or called to testify at trial."   Ex. 26 at 82.   Also, "Defendant has not alleged how further investigation or the presentation of the additional testimony and evidence would have created a reasonable probability of a different result at trial."   Id.   Finally, the circuit court found Petitioner failed to demonstrate why an expert was needed to challenge the state's witnesses where defense counsel rigorously challenged the state's witnesses and established the facts needed for the defense.   Id. at 85.

The state court's determination is consistent with federal precedent. The court relied on the two-pronged <u>Strickland</u> standard. The 1st DCA affirmed the circuit court's decision. This decision is an adjudication on the merits and is entitled to deference under AEDPA. Applying <u>Wilson</u>'s look-through presumption, the rejection of the claim of ineffective assistance of counsel was based on a reasonable determination of the facts and a reasonable application of <u>Strickland</u>. As such, AEDPA deference is warranted.

As the 1st DCA's decision is consistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts, Petitioner is not entitled to habeas relief. When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in <u>Strickland</u>, 466 U.S. at 689. This Court must also consider that counsel is given wide latitude in making tactical decisions, like selecting whom to call as witnesses. <u>Id</u>. Moreover, "[t]here are countless ways to provide effective assistance in any given case." <u>Id</u>. Here, the decision to rely on cross-examination of the state's witnesses was found to be reasonable trial strategy. Counsel's decision-making was not so patently unreasonable that no competent attorney would have chosen that path. Indeed, just because the

16

state called an expert does not mean that the defense must do the same. <u>Richter</u>, 562 U.S. at 111 (concluding <u>Strickland</u> "does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense").   Finally, there is no reasonable likelihood that the testimony of a defense expert would have changed the verdict as the evidence against Petitioner was abundant (the victim's testimony and the strong DNA evidence).

The Court concludes that the state court's adjudication of the claim of ineffective assistance of counsel is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the fats.   Therefore, ground two is due to be denied.

## VI.   GROUND THREE

In his third ground, Petitioner claims his counsel was ineffective when he failed to request a <u>Frye</u>[4] hearing to test the validity of the statistical frequency of the DNA match.   Petition at 11-12.   In his supporting facts, Petitioner contends the state failed to establish the expert's training and qualification in statistical frequencies, the statistical methodology used,

---

4  <u>Freye v. United States</u>, 293 F. 1013 (D.C. Cir. 1923).

whether the databased used was based on established scientific principles, and the expert's proficiency in the methodology used.   Id. at 12.

As previously noted, defense counsel, through discovery, requested the relevant information prior to trial.   Specifically, counsel requested the case file (all records, notes, and photographs made by the lab), laboratory protocols, chain of custody information, software programs, macros (GeneScan & Genotyper), data files, STR frequency tables, contamination information, accreditation information, and laboratory personnel information.   Ex. 5 at 10-11.   Prior to trial, defense counsel deposed the state's expert, Jeannelyn Adona.   Ex. 6 at 10.   Apparently, counsel had all of the information he needed to assess Ms. Adona's testimony and cross-examine her.

On direct, Ms. Adona attested she is a crime laboratory analyst for the FDLE in the Jacksonville Regional Operations Center in the Biology and DNA Section.   Ex. 17 at 100.   She had been employed there since 2004 and analyzes evidence and performs STR DNA testing.   Id. at 100-101.   Ms. Adona said she holds a bachelor's degree in biology and a master's degree in genetics.   Id. at 101.

Ms. Adona explained:

> STR DNA testing is a type of testing where it determines the DNA profile of the sample.   And DNA profiles are obtained from known standards which are

> samples from known individuals, and then the DNA
> profiles also obtained from question [sic] samples and
> these are also compared in order to include or exclude
> the DNA profiles from known individuals to that of the
> DNA profiles from the questioned samples.

Id.

Ms. Adona confirmed she personally performed procedures dealing with forensic analysis and serology.   Id.   She attested that the procedures used by FDLE are widely accepted in the scientific community and the lab is accredited.   Id. at 102.   With that, the prosecutor asked that Ms. Adona be accepted as an expert in DNA and forensic lab, and defense counsel stipulated. Id. at 103.

On cross-examination, Ms. Adona testified she followed standard operating procedure in the Forensic Science Quality Manual.   Id. at 133.   She said, "the DNA profile matches the DNA profile from Mr. Wilson Holmes and the frequency of occurrence of that particular DNA profile from the sample from teeth for unrelated individuals is one in 22 trillion Caucasians and one in 490 bill[i]on African-Americans, and one in 12 trillion Southeastern Hispanics."   Id.

On re-direct, Ms. Adona explained her job is to do the following (1) determine if there is DNA for testing; (2) upon comparison, determine if there is a match; and, if so, (3) determine the statistical frequency of that match.   Id.

at 138.   She said she did the extraction of the sample from the victim's teeth manually as well as the quantitation and amplification.   Id. at 140.

There is a fundamental problem with Petitioner's claim; the Frye standard was not in effect at the time of Petitioner's trial in 2014; therefore, Petitioner's claim has no merit.   The Daubert[5] standard was in effect at the time of Petitioner's trial.   As such, a request for a Frye hearing would have been unfruitful.   Counsel cannot be deemed ineffective for failure to request a hearing that would have been denied as non-meritorious.   Ex. 26 at 86-87.

Alternatively, the circuit court found that Petitioner failed to establish he was prejudiced by any failure to object and request a Frye hearing.   Id. at 87.   Of importance, the STR DNA testing performed by Ms. Adona was not new or novel.   Id.   Indeed, Ms. Adona testified that the procedure she utilized was widely accepted in the scientific community.   Petitioner failed to state how the laboratory procedures did not comport with Frye.   Id. at 88. Therefore, even if a Frye hearing had been conducted, the evidence would still have been admissible.   Id.

The circuit court found neither deficient performance nor prejudice under the Strickland prongs.   Id. at 88-90.   Again, defense counsel stipulated

---

5 Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

as to Ms. Adona being an expert after deposing her pre-trial.   Although the state did not lay a foundation for the expert's testimony on the statistical analysis of the DNA test results, Petitioner "has failed to allege or demonstrate that the challenged evidence and testimony would have been inadmissible" even if there had been a <u>Frye</u> hearing requested and conducted.   <u>Id</u>. at 90.

Relying on the <u>Strickland</u> two-pronged standard, the circuit court denied the post-conviction motion.   The 1st DCA affirmed.   As the state court properly applied the two-pronged standard of review, Petitioner cannot satisfy the contrary to test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on <u>Strickland</u> standards.   Here the state court applied clearly established federal law to reasonably determined facts when determining the merits of the claim; "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement."   <u>Shinn</u>, 141 S. Ct. at 520 (quoting <u>Richter</u>, 562 U.S. at 103).

The state court's determination is consistent with federal precedent and is entitled to AEDPA deference.   The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. Its adjudication of the claim is not contrary to or an unreasonable application of <u>Strickland</u> and its progeny or based on an unreasonable determination of

21

the facts.   Therefore, the state court's decision is entitled to full deference and ground three is due to be denied.

## VII.   GROUND FOUR

In his fourth ground, Petitioner raises another claim of ineffective assistance of trial counsel, claiming counsel performed deficiently for failure to request a hearing to suppress out-of-court and in-court identifications. [6] Petition at 14.   In his post-conviction motion, Petitioner raised a claim of ineffective assistance of counsel for failure to object to a suggestive photo lineup.   Ex. 26 at 68-71.   The state court found the claim untimely, or alternatively the court found Petitioner's claim of ineffective assistance of counsel with regard to the suggestive photo lineup insufficient to warrant relief.   Ex. 26 at 90-91.   At the photo lineup, the victim did not identify Petitioner, she simply narrowed her selection down to two photographs and did not positively identify anyone.   The court determined that Petitioner failed to establish prejudice in this regard.   Id.

Petitioner did not raise the claim of ineffective assistance of counsel for failure to request a hearing to suppress in-court identifications in his operative

---

[6] In the Reply, Petitioner states he raises a claim in ground four that he was denied the effective assistance of counsel when counsel failed prior to trial to move to suppress the out-of-court identification of him by the victim as well as the in-court identification that would have been tainted by the impermissibly suggestive out-of-court identification procedure. Reply at 12.

Rule 3.850 motion.   Ex. 26 at 50-71.   Petitioner obviously knew of this ground as he raised it in a previously filed Rule 3.850 motion, however he did not raise it in his amended motion.   <u>Id</u>. at 40-42.   In the operative amended motion, he elected to focus on the issue of the out-of-court identification procedure, not the in-court identification, although he suggests that the out-of-court identification tainted the in-court identification.

Petitioner is not entitled to post-conviction relief as he failed to establish prejudice.   As the circuit court noted, he failed to "explain precisely what counsel should have objected to or the basis for such an objection."   <u>Id</u>. at 91.   Additionally, he failed to argue the remedy.   <u>Id</u>.   The court found his conclusory allegations were insufficient to establish prejudice.   <u>Id</u>.   The 1st DCA affirmed the denial of post-conviction relief.

Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying relief.   The state has not attempted to rebut this presumption.   Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.   Upon review, the 1st DCA's decision is not inconsistent with Supreme Court precedent, including <u>Strickland</u> and its progeny.   Moreover, the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u> or based

on an unreasonable determination of the facts.   Therefore, ground four is due to be denied.

In the alternative, Respondents submit that the claim raised in ground four concerning the suggestive photo identification lineup was deemed time-barred by the state court; therefore, it is procedurally defaulted.   Response at 27.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747-748, 111 S. Ct. 2546; Sykes,[8] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).

[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted state court remedies.   Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982).   A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'"   Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine.   "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." Shinn v. Ramirez, 142 S. Ct. 1718, 1728 (2022) (citing Coleman, 501 U.S. at 750).   To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court.   Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999).   If cause is established, a petitioner must demonstrate prejudice.   To demonstrate prejudice, a

petitioner must show "there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred."   Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995).   The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent.   Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

Petitioner's claim of ineffective assistance for failure to object to the suggestive photo identification lineup was deemed untimely by the state courts and therefore the claim is unexhausted and procedurally defaulted.   To the extent Petitioner is attempting to raise a claim of ineffective assistance of counsel for failure to object to the in-court identifications, this claim is also procedurally defaulted as it was not raised in the operative Rule 3.850 motion and exhausted.   As Petitioner failed to establish cause and prejudice or any factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, the court deems the claim of ineffective

assistance of counsel raised in ground four procedurally defaulted, and Petitioner is procedurally barred from raising ground four in this proceeding.

To the extent Petitioner claims his procedural default should be excused based on the narrow exception under <u>Martinez</u>, Reply at 18-20, Petitioner must demonstrate the underlying ineffectiveness claim is substantial (has some merit). [9]   <u>Martinez</u>, 566 U.S. at 14.   In this instance, the underlying ineffectiveness claim lacks merit; therefore, Petitioner has not demonstrated he can satisfy an exception to the procedural bar.   This Court is not convinced that counsel performed deficiently by failing to request a hearing to suppress the identifications.

The victim identified Petitioner in court.   Ex. 16 at 195.   She attested she recognized him "after seeing him live" during court proceedings.   <u>Id</u>.   She had previously selected his photograph and another individual's photograph out of a photo spread and narrowed it down, but she could not positively identify Petitioner or the other individual as the suspect based on photographs. <u>Id</u>. at 193-94.   Defense counsel cross-examined the victim and she stated she did not rely on Sergeant Mills to make her identification.   Ex. 17 at 13.   On re-direct, she confirmed that her in-court identification was based on her

---

[9] The record demonstrates Petitioner did not have counsel for the filing of his post-conviction Rule 3.850 motion.

memory after seeing Petitioner in court, not on what someone told her about a DNA hit.   Id. at 17-18.

Petitioner's counsel's performance was not deficient for failing to move to suppress the identifications.   A motion to suppress would have been futile; therefore, counsel was not ineffective for failing to file a motion seeking suppression of the identifications.   As such, Petitioner's defense counsel cannot be deemed to have performed deficiently by failing to file the motion, and it follows that Petitioner cannot satisfy the prejudice prong of Strickland due to the futility of such a motion.   Therefore, the underlying ineffectiveness claim is not substantial.

Even if counsel's performance was deemed deficient, Petitioner has not established prejudice, failing to meet Strickland's prejudice prong.   Petitioner has failed to show that it was reasonably likely that but for counsel's deficient performance, the result of the proceeding would have been different.   The DNA evidence would not have been excluded and this evidence was tremendously significant as the victim bit her assailant and the perpetrator's skin that remained between the victim's teeth was ultimately tested through the STR DNA testing process.   Also, the victim selected Petitioner's photograph out of a photospread, although she was unable to identify him as the ultimate suspect as she had selected another photograph as well.   She

28

simply narrowed the pool.   Ultimately, the victim attested she was able to identify the Petitioner in court, based on her memory of the event.   Of import, the DNA evidence proved to be overwhelmingly significant: one in 22 trillion Caucasians, one in 490 billion African-Americans, and one in 12 trillion Southeastern Hispanics.   As such, Petitioner is not entitled to habeas relief on ground four of the Petition.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2.     This action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk** shall enter judgment accordingly and close this case.

4.     If Petitioner appeals the denial of his Petition (Doc. 1), **the Court denies a certificate of appealability**. [10]   Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as

---

[10] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Upon due consideration, this Court will deny a certificate of appealability.

a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

      **DONE AND ORDERED** at Jacksonville, Florida, this 24th day of October, 2022.

_____

BRIAN J. DAVIS
United States District Judge

sa 10/20
c:
Wilson Holmes
Counsel of Record